UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

| | |
|---|---|
| LAMONTE WILLIAMS #173950, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:06-cv-100 |
| ) | |
| v. ) | HON. R. ALLAN EDGAR |
| ) | |
| BILL LUETZOW, et al., ) | |
| ) | **OPINION** |
| Defendants. ) | |
| _____) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), the court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. The court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 1733 (1992). Applying these standards, the court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      Factual Allegations

Plaintiff Lamonte Williams, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants AMF Assistant Deputy Warden Bill Luetzow, AMF Warden Tim Luoma, Marquette Branch Prison (MBP) Warden Gerald Hofbauer, MBP Deputy Warden Robert Napel, MBP Assistant Deputy Warden James Trethewey, MBP Assistant Deputy Warden Jim Alexander, MBP Assistant Deputy Warden Catherine Alto, MDOC Regional Prison Administrator James MacMeekin, and MDOC Director Patricia L. Caruso.

Plaintiff claims that he received a notice of intent to classify to administrative segregation after he was implicated in an April 12, 1993, stabbing of a corrections officer by four masked prisoners. The notice of intent was upheld following a hearing on April 22, 1993. Plaintiff was subsequently classified to administrative segregation by the security classification committee. On June 4, 1993, the Michigan State Police completed an investigation and Plaintiff received a major misconduct based on confidential information. On June 18, 1993, an administrative hearing was conducted and Plaintiff was found guilty of being an accomplice to assault and battery. Plaintiff was sentenced to 30 days detention and 30 days loss of privileges. Plaintiff also lost disciplinary credits.

Plaintiff claims that he has been held in administrative segregation for the past 12 years in violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process rights. Plaintiff has repeatedly submitted requests to be reclassified to the general population, without avail. According to the November 28, 2004, step I

response to grievance number MBP-04-11-0268822-B, which is attached to Plaintiff's complaint, Plaintiff has been considered for reclassification on several occasions. The response states:

> Your grievance has been reviewed and an inquiry made. You contend that you have been inappropriately continued in Administrative Segregation and state that you have never been referred to the Regional Prison Administrator for reduction in custody. A review of your file indicates that on at least three occasions you have been recommended for release to Level V general population by housing staff. On 03/26/01 you were submitted for reduction by AMF housing staff. On 04/05/01 this request was denied by Warden Pennell. On 05/12/03 your case was submitted for custody reduction by MBP housing staff with a denial on 05/13/04 being the result. On 07/26/04 housing staff at MBP again referred your case for reduction consideration. On 07/28/04 this request for a recommendation to the RPA (regional prison administrator) was denied by MBP SCC (security classification committee) members.
>
> Refer to PD-04.05.120, Section DDD and EEE, which identify the requirements and factors considered in the custody reduction of a prisoner classified to administrative segregation, Section DDD states, in part, "*Reclassification from administrative segregation status shall occur only with the approval of the SCC, except that release of a prisoner confined to administrative segregation as a result of a serious assault on staff also shall require written approval of the appropriate CFA Regional Prison Administrator.*" In your particular case, you have been denied by SCC, therefore, the issue would not be forwarded to the RPA. These previous denials were based upon factor #2 of section EEE, which states "*Review of the circumstances which necessitated segregation as well as any history of prior behavior which also required segregation.*" Your file not only reveals the serious nature of the incident which placed you in administrative segregation on 04/23/093, where you were identified as an assailant in a stabbing that took place on four SPSM staff, but it also reveals that you have additional serious assaultive behavior reported in your file from previous incidents.
>
> You are correct in that your behavior while in segregation has been good, however, this is only one factor considered when a Security Classification Committee considers your case. Your case will continue to be reviewed per PD-04.05.120 as required. When housing staff, the Security Classification Committee at the facility

- 3 -

>where you are located and the RPA all agree that you can be managed with group privileges, your custody reduction will be granted. You have shown no violation of policy or procedure in your claim.

In the October 12, 2005, step III response to grievance number AMF-05-07-01860-22b, which is also attached to the complaint, the respondent addresses the July 13, 2005, denial of Plaintiff's request for RPA consideration of release from administrative segregation. The response states:

>A review of the grievant's file information indicates an extensive history of serious assaultive behavior, including two separate criminal convictions for stabbing other prisoners and a major misconduct guilty finding for involvement in the stabbing of several staff members at SMI. Since his classification to administrative segregation, the grievant incurred several major misconducts, including assault on staff and possession of dangerous contraband.

The response also notes that although Plaintiff had recently demonstrated a significant period of misconduct free behavior, his continuation in administrative segregation was appropriate based on the other factors set forth in policy directive 04.05.120, which included review of the circumstances which necessitated segregation as well as any history of prior behavior which also required segregation.

As noted above, Plaintiff claims that his continued confinement in administrative segregation violates his Eighth and Fourteenth Amendment rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*,

510 U.S. 1177, 114 S. Ct. 1218 (1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994).

As noted above, Plaintiff claims that his confinement to administrative segregation violates his constitutional rights. In the MDOC, security classifications, from least to most secure, are: Community Status, Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ H (effective March 1, 2004). There are various types of segregation, including administrative segregation and detention. Administrative segregation is the most restrictive and is imposed for institutional security, e.g., when a prisoner poses a serious escape risk. MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶ J (effective Feb. 14, 2004). Detention, or "punitive segregation" can be imposed as a sanction for committing a major misconduct, if ordered by the hearing officer. *Id.*, ¶ W. If possible, detention is served in a "designated detention cell" rather than in administrative segregation. *Id.* A prisoner may not remain on detention for a period longer than that ordered by the hearing officer. *Id.* The behavioral adjustment of a prisoner in segregation is reviewed periodically with the prisoner. *Id.*, ¶ GGG. Reclassification from administrative segregation occurs only with the approval of the Security Classification Committee. *Id.*, ¶ III. If the prisoner committed a serious assault, the approval of the Regional Prison Administrator is also required. *Id.*

Plaintiff states that his placement in segregation has been "atypical and significant." Plaintiff contends that he has been placed in administrative segregation for more than 12 years. Plaintiff alleges that prisoners in administrative segregation have no access to communal meals, religious services, vocational programs, work assignments, narcotics and alcoholics anonymous, GED classes, adult basic education classes, gym, weight room, or organized sport events. Plaintiff states that administrative segregation prisoners remain in their cells for a minimum of 23 hours a day and can only order a few limited items from the prisoner store. Administrative segregation prisoners are only allowed to shower three times a week and may only use the telephone for verified family emergencies and at the request of an attorney. Plaintiff claims that he has not been able to use the telephone in over eight years. Plaintiff states that prisoners in administrative segregation are prevented from taking correspondence courses.

Plaintiff claims that as a direct result of being placed in administrative segregation, he is being denied parole because he has not been able to participate in assaultive offender therapy, which is not available in a level 5 facility. Plaintiff states that if he were not in administrative segregation, he would be eligible to transfer to a lower custody level where he could complete assaultive offender therapy, which would virtually guarantee parole.

To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and

significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). The length of the placement is not determinative. *See Jones*, 155 F.3d at 812.

The United States Supreme Court recently addressed this issue in *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384 (2005). In *Wilkinson v. Austin*, the Court found that the plaintiff had a liberty interest in avoiding assignment in Ohio's supermax prison because it involved the deprivation of almost all human contact, even to the point that conversation is not permitted between cells. In addition, the light is on for 24 hours, although it may be dimmed, exercise is for 1 hour per day, but only in a small indoor room, and review of such placement occurs annually after the initial 30-day review. Finally, the Supreme Court noted that in Ohio, such a placement disqualifies an otherwise eligible inmate for parole consideration. *Id.* 125 S. Ct. at 2394-95.

However, the Supreme Court in *Wilkinson v. Austin* made it clear that the determination of whether an inmate has a liberty interest in avoiding a particular condition of confinement or a particular institutional placement continues to be governed by *Sandin v. Conner*, 515 U.S. 472 (1995), and that such interests will generally be limited to:

> freedom from restraint which, while not exceeding the sentence in
> such an unexpected manner as to give rise to protection by the Due
> Process Clause of its own force, nonetheless imposes atypical and

> significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 484.  In *Wilkinson v. Austin*, the Supreme Court went on to find that Ohio's informal, nonadversary procedures for placement in the supermax prison were adequate to safeguard Plaintiff's liberty interest.  *Austin*, 125 S. Ct. at 2397.

The court notes that given the length of Plaintiff's confinement in administrative segregation and the conditions associated with this confinement, it appears that such confinement may constitute an atypical and significant hardship.  However, even if Plaintiff's incarceration in segregation is deemed to be atypical and significant, the consequence would merely be to entitle him to a periodic due process review of his segregation status.  Applying *Hewitt v. Helms*, 459 U.S. 460 (1983), the court finds that Plaintiff's original placement and continuation in segregation was well-supported and, therefore, met due process standards.  Plaintiff does not dispute that he has two separate criminal convictions for stabbing other prisoners and a major misconduct guilty finding for involvement in the stabbing of several prison staff members.  Nor does Plaintiff dispute that following his classification to administrative segregation, he incurred several major misconducts, including assault on staff and possession of dangerous contraband.  Given Plaintiff's record, he presented an obvious threat to prison staff.  Moreover, it is clear that Plaintiff has received periodic reviews by the SCC.  The fact that Plaintiff disagrees with the reasoning and recommendations of the SCC does not render the periodic reviews constitutionally deficient.  Accordingly, the court concludes that Plaintiff has received more than adequate procedural due process.

Plaintiff claims that his continued confinement in administrative segregation constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff contends

that recent wholesale confinement of mentally ill prisoners to administrative segregation has resulted in the unit becoming an extremely stressful and volatile environment. Mentally ill prisoners are frequently unable or unwilling to take care of their basic hygienic needs. Most never shower and live in their own filth for weeks at a time. Plaintiff contends that some cells resemble giant septic tanks with excrement smeared on walls and doors, and with puddles of urine on the floor. As a result, the smell of fermenting urine and feces in administrative segregation is common and inescapable. Plaintiff also states that mentally ill prisoners frequently set fires, flood their cells, kick on doors, slam footlocker lids, yell, set off sprinkler heads, destroy their cells, and are gassed. Mentally ill prisoners also throw urine and feces at other prisoners and staff and self-mutilate and attempt suicide. Such conditions result in staff who become verbally and physically abusive, falsify misconducts, and have prisoners placed on restrictions in order to vent their frustration and wrath. Plaintiff claims that he has not seen his family or friends in over eight years because he has been confined in prisons 500 miles from his home and is unable to even talk to his family because he is prohibited from using the telephone. Plaintiff claims that all these conditions combined inflict "psychological torture" on Plaintiff and are slowly "driving [him] insane."

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

As noted above, Plaintiff claims that the conditions and restrictions imposed upon him as a segregated prisoner have caused him mental distress in violation of his Eighth Amendment rights. Plaintiff cites limited telephone use, access to law library materials, showers, yard time, and access to the prison store. He also claims that the other segregation prisoners are disruptive and noisy, and that the nearby cells frequently smell of human urine and feces. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9(1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain

privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000), *cert. denied*, 531 U.S. 1023 (2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). Moreover, Plaintiff cannot not bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Watson v. McClanahan*, No. 99-6124, 2000 WL 922899, at *2 (6th Cir. June 27, 2000); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000). As such, Plaintiff fails to state an Eighth Amendment claim against Defendants.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c).

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court dismisses the action, the court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the court will assess the appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the appellate filing fee in one lump sum.

This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: 6/9/06 　　　　　　　　　　　*/s/ R. Allan Edgar*
　　　　　　　　　　　　　　　　　　R. ALLAN EDGAR
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE